INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, Plaintiffs-Appellants,

v.

ALOHA AIRLINES, INC., Defendant-Appellee.

No. 84–2693.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 14, 1985.

Decided Feb. 6, 1986.

As Amended May 21, 1986.

Herbert R. Takahashi, Honolulu, Hawaii, for plaintiffs-appellants.

Robert Katz, Richard M. Rand, Honolulu, Hawaii, for defendant-appellee.

Before SKOPIL, FLETCHER, and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

The International Association of Machinists and Aerospace Workers (hereinafter IAM) appeals from the district court's order granting summary judgment in favor of Aloha Airlines, Inc. (hereinafter Aloha), on the IAM's complaint for declaratory relief and damages for breach of the collective bargaining agreement and for violations of the "status quo" provisions of the Railway Labor Act (RLA), 45 U.S.C. §§ 151–188 (1982). This case presents a question of first impression in this circuit: what statute of limitations is applicable to an action for breach of a collective bargaining agreement and for violations of the "status quo" provisions of the RLA? We conclude that principles of res judicata bar relitigation in this action of IAM's request for compulsory arbitration. However, IAM's requests for declaratory relief and damages for breach of the collective bargaining agreement and for breach of the RLA's status quo provisions are not barred as they have not been litigated previously. We further find that the instant action was timely filed within the limitations period then applicable.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Aloha, a common carrier under section 201 of the RLA, 45 U.S.C. § 181 (1982), entered into a collective bargaining agreement with the IAM on December 6, 1979 (the Basic Agreement). Article XXIII of the Basic Agreement provided that the agreement would remain in force through December 31, and would renew itself each year unless a notice of intended change was served by one of the parties.

As a result of financial difficulties within the airline industry during 1981–82, the IAM agreed to temporary wage and benefit concessions in an Interim Agreement which became effective on April 2, 1982 and was incorporated into the Basic Agreement. The Interim Agreement provided that the concessions would be effective only through February 28, 1983, and that on March 1, 1983, the Basic Agreement would renew itself without change unless either party filed a notice of intended change.

On December 30, 1982, the IAM served a notice of intended change on Aloha, proposing modifications in the Basic Agreement. The parties commenced bargaining in January 1983. They reached an impasse, and the dispute moved into mediation pursuant to section 5 of the RLA, 45 U.S.C. § 155 (1982). On February 11, 1983, Aloha advised the IAM that the terms of

the Interim Agreement would continue in effect beyond March 1, 1983 and until further notice. The IAM filed grievances with Aloha on behalf of the clerical and mechanical units concerning Aloha's proposal to continue paying wages and benefits in accordance with the Interim Agreement. The grievances were processed to a deadlock under the grievance procedure set forth in Article XV of the collective bargaining agreement. On June 24, 1983, Aloha notified the IAM by letter that it refused to submit the dispute to arbitration pursuant to Articles XV and XVI of the collective bargaining agreement because it was a major dispute which was not subject to binding arbitration under the RLA. Aloha relied upon the status quo provisions of the RLA, which require both parties to a collective bargaining agreement to preserve the status quo after service of a notice of intended change until a new agreement is reached or the RLA's mediation procedures have been exhausted. *See* 45 U.S.C. §§ 155, 156 (1982).[1]

The IAM filed an action in Hawaii state court on July 27, 1983 to compel arbitration of the dispute. Aloha removed the action to federal court on the grounds that it was a dispute arising under the RLA, and counterclaimed for declaratory and injunctive relief. Aloha also filed a motion for partial summary judgment on the issue of compelling arbitration. The district court granted Aloha's motion for partial summary judgment and denied the IAM's petition to compel arbitration on October 25, 1983. This court affirmed the district court's judgment on the IAM's interlocutory appeal. *IAM v. Aloha Airlines, Inc.*, 776 F.2d 812, 816 (9th Cir.1985).

On March 9, 1984, the IAM filed a second complaint in district court on behalf of the clerical and mechanical employees, seeking declaratory relief and damages for breach of contract and for violations of the status quo provisions of the RLA. The complaint also seeks an order to arbitrate the dispute. Aloha filed a motion to dismiss the entire action on *res judicata* grounds and for sanctions. The district court treated Aloha's motion as a summary judgment motion and granted it on the grounds that the previous ruling on the petition to compel arbitration was *res judicata* of the second action for declaratory relief and damages. Aloha's motion for sanctions was denied.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo. Grigsby v. CMI Corp.*, 765 F.2d 1369, 1373 (9th Cir. 1985). We apply the same standard as that employed by the trial court under Fed.R. Civ.P. 56(c): we will affirm only if the record, read in the light most favorable to the non-moving party, reveals no genuine issues of material fact and establishes that the moving party is entitled to judgment as a matter of law. *Id.*

## III. RES JUDICATA

Under the doctrine of *res judicata*, a final judgment on the merits precludes relitigation of claims which were or could have been raised in a prior action. *Amaro v. Continental Can Co.*, 724 F.2d 747, 749 (9th Cir.1984). All issues that were litigated or that might have been litigated as part of the prior cause of action are barred. *Los Angeles Branch NAACP v. Los Angeles Unified School District*, 750 F.2d 731, 737 (9th Cir.1984) (en banc), *cert. denied,* — U.S. —, 106 S.Ct. 247, 88 L.Ed.2d 256. The IAM contends that the district court's grant of partial summary judgment in the prior action was not a judgment "on the merits" of the present dispute so as to preclude relitigation of claims which were or could have been raised in that action.

1. A dispute which concerns the formation of a collective bargaining agreement or efforts to secure new rights and incorporate them into future agreements is a "major dispute" over which the federal courts have jurisdiction. *Elgin, Joliet & Eastern Railway v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945), *aff'd on rehearing,* 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946); *IAM v. Aloha Airlines, Inc.,* 776 F.2d 812, 815 (9th Cir.1985). A "minor dispute" concerns the interpretation or application of a collective bargaining agreement and is resolved through the compulsory arbitration procedures established by the RLA. *Id.*

Instead, the IAM argues that the district court's ruling that the dispute was not arbitrable was a jurisdictional ruling.

The district court's memorandum opinion in the prior action addresses the question whether the IAM's grievance involved a minor dispute subject to arbitration under the parties' collective bargaining agreement, or a major dispute involving the application of the status quo provisions of the RLA. The district court in the prior action did not purport to resolve the primary question raised by the instant complaint: whether Aloha's refusal to reinstate the terms of the Basic Agreement violates the collective bargaining agreement and the status quo provisions of the RLA. On the IAM's interlocutory appeal in the prior action another panel of this court determined that the dispute was a major dispute not subject to arbitration. *IAM v. Aloha Airlines, Inc.*, 776 F.2d at 816. The court viewed the case as raising only the narrow question whether the dispute was arbitrable, and expressly refused to resolve on appeal the terms and conditions of employment which should apply during the status quo period under the RLA. *Id.* at 816–17.

Because this court's resolution of the IAM's previous action settled the question whether the IAM's grievance was arbitrable, the IAM's request in its second complaint for an order compelling arbitration is barred by the doctrine of *res judicata.* The remainder of the IAM's second action, however, is not barred by *res judicata* principles. The merits of the dispute— whether Aloha's refusal to reinstate the terms of the Basic Agreement violates the collective bargaining agreement and the status quo provisions of the RLA—were not actually litigated in the prior action to compel arbitration.

The claims raised by the IAM in the instant case could not have been raised in the prior action. When faced with a petition to compel arbitration, a court's role is limited to " 'ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract.' " *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1374 (9th Cir.1984) (quoting *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960)). The court neither resolves the underlying factual controversy nor weighs the relative merits of the parties' claims. *URS Co.-Kansas City v. Titus County Hospital Dist.*, 604 F.Supp. 423, 424 (W.D.Mo.1985).

Aloha nevertheless contends that the IAM should have joined its motion to compel arbitration and its claim for declaratory relief and damages in a single action, and argues that the IAM gambled and lost by deliberately splitting its cause of action. Aloha's argument is meritless. Applying the standard enunciated by this court in *Costantini v. Trans World Airlines*, 681 F.2d 1199 (9th Cir.), *cert. denied*, 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982), we find that the two actions involve different claims. In *Costantini*, we established the following criteria for determining whether successive lawsuits involve a single cause of action:

> "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir.1980). The last of these criteria is the most important. *Id.*

*Costantini*, 681 F.2d at 1201–02 (footnote omitted).

The instant action and the prior action do share a common nucleus of underlying facts. We are persuaded, however, that it would be inequitable to require a party to simultaneously assert that the federal courts lack jurisdiction over a dispute because it is a minor dispute subject to arbitration, and that the federal courts have jurisdiction to resolve the merits of the dispute because it is a major dispute governed by the RLA. Moreover, the remain-

ing criteria circumscribing the boundaries of a single claim are not met. Prosecution of the second action would not impair Aloha's right to have the dispute resolved under the RLA in federal court rather than by an arbitrator; in fact, it would further that right. The question whether different evidence would be required does not offer any guidance in the context of the instant case because the facts are not in dispute: the sole questions raised by both actions are legal in character rather than factual.

Finally, the two actions allege the infringement of different rights. In the first action, the IAM sought to vindicate Aloha's alleged infringement of its contractual right to arbitration. In the second action, the IAM seeks to enforce its statutory right to require Aloha to maintain the status quo during mediation of their bargaining dispute. Not only would it be inequitable to require a party to a collective bargaining agreement to consolidate in a single action a request for arbitration and a contradictory request for adjudication of the underlying dispute by the court, but such a requirement would destroy the utility of a petition to compel arbitration.

Aloha's reliance on *Towers, Perrin, Forster & Crosby, Inc. v. Brown*, 732 F.2d 345 (3d Cir.1984) is misplaced. In *Towers*, Brown filed an action in state court requesting interpretation of noncompetition and forfeiture provisions in a contract and seeking a declaratory judgment. *Id.* at 346–47. Towers answered and filed a petition to compel arbitration pursuant to the California Arbitration Act. *Id.* at 347. The superior court denied the petition to compel, and its ruling was ultimately affirmed on appeal. *Id.* While the appeal was pending, Towers filed a second petition to compel arbitration pursuant to the Federal Arbitration Act in federal court, which the district court granted. *Id.*

The Third Circuit reversed, finding that *res judicata* barred the pending case because the California court had already ruled on the motion to compel arbitration. *Id.* at 348. The court reasoned that the two actions sought exactly the same re-lief—arbitration—and opined that Towers could not split its cause of action by gambling that it would win on a state law theory, and when it lost, seeking to assert a federal theory which it had apparently held in reserve. *Id.* at 348, 351.

*Towers* is readily distinguishable from the instant case, where the second action is not another motion to compel arbitration on a different legal theory, but instead seeks to litigate the merits of the dispute. Indeed, *Towers* provides support for the IAM's argument that the merits of a dispute arguably subject to arbitration constitute a separate claim from the claim that the dispute is arbitrable. In rejecting Towers' argument that the California order was not *res judicata* because the merits had not yet been decided, the Third Circuit stated:

Although a trial on the merits has yet to take place, we do not believe that the finality of the order denying arbitration is affected. There were essentially two separate actions in the California trial court: TPFC's [Towers'] special proceeding to compel arbitration, and Brown and Riding's action for a declaratory judgment and damages. In our view, the special proceeding finally determined the merits therein, i.e., the arbitrability of the dispute. Once a dispute has been found not arbitrable, the issue of arbitrability should not arise again during proceedings on the merits. The finality of the order entered in the special proceeding is not undermined by the fact that the outcome of the dispute itself must be resolved by a separate action. *See Cole v. BT & G, Inc.*, 141 Cal.App.3d 995, 190 Cal.Rptr. 690 (1983) (order in special proceeding was a final judgment although merits of underlying dispute remained to be litigated in a separate action).

*Id.* at 349.

The district court erred in ruling that the prior petition to compel arbitration was *res judicata* of all the claims set forth in the second complaint. The portion of the IAM's second complaint in which it seeks an order compelling arbitration was, how-

ever, properly dismissed on *res judicata* grounds.

## IV. STATUTE OF LIMITATIONS

Aloha also contends that the IAM's second action is barred by the statute of limitations. This argument was raised below but the district court did not address it in its unpublished memorandum opinion. Although Aloha did not file a cross-appeal from the district court's ruling, we exercise our discretion to decide the statute of limitations question because it is a purely legal issue, the injection of which would not have caused the parties to develop new or different facts. *See Donovan v. Crisostomo,* 689 F.2d 869, 874 (9th Cir.1982) (court heard and decided statute of limitations issue which was raised in defendant's answer but was not considered by trial court; issue is one of law and requires no further factual development); *see also Abex Corp. v. Ski's Enterprises,* 748 F.2d 513, 516 (9th Cir.1984) (whether Equal Access to Justice Act abrogates the priority of outstanding tax liens to allow attorneys' fees award to interpleader plaintiff is purely legal question which may be resolved on appeal even though not raised below).

### A. UNIFORM FEDERAL STANDARD

█ The RLA does not contain a statute of limitations for actions such as the present combined claim for breach of the collective bargaining agreement and breach of the RLA's status quo provisions. Ordinarily, when Congress has not expressly provided a statute of limitations governing actions based upon a federal statute, the courts must apply the most closely analogous state statute. *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 60, 101 S.Ct. 1559, 1562–63, 67 L.Ed.2d 732 (1981) (citing *Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1112–13, 16 L.Ed.2d 192 (1966)), *overruled on other grounds, DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

In *DelCostello v. International Brotherhood of Teamsters,* the Supreme Court held that hybrid section 301/duty of fair representation claims under the Labor Management Relations Act (LMRA), 29 U.S.C. §§ 141–187 (1982), are to be governed by a uniform federal limitations period. *DelCostello,* 462 U.S. at 171, 103 S.Ct. at 2294. The Court reasoned that state legislatures do not devise their limitations periods with national interests in mind, and noted that the lengthy state limitations periods analagous to duty of fair representation claims (i.e., the three to six year period applicable to legal malpractice claims in most states) would frustrate "the relatively rapid final resolution of labor disputes favored by federal law." *Id.* at 168 & n. 18, 103 S.Ct. at 2292 & n. 18.

The Court concluded that a more analogous limitations period was the six-month period specified in section 10(b) of the NLRA, 29 U.S.C. § 160(b) (1982), which governs the bringing of an unfair labor practice charge before the National Labor Relations Board. *DelCostello,* 462 U.S. at 169, 103 S.Ct. at 2292–93. The Court opined that the need for national uniformity is greater in such a hybrid action than in an action for damages resulting from a breach of the collective bargaining agreement because a hybrid action involves " 'those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective agreement and the private settlement of disputes under it.' " *Id.* at 162–63, 103 S.Ct. at 2289–90 (quoting *Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 702, 86 S.Ct. 1107, 1111, 16 L.Ed.2d 192 (1966)). The Court found that the six-month limitations period specified in section 10(b) properly accommodated the competing interests. *DelCostello,* 462 U.S. at 171, 103 S.Ct. at 2294.[2]

---

**2.** In *Hoosier* the Court had previously held that a section 301 action by a union for damages caused by a breach of an employer's obligation embodied in a collective bargaining agreement was governed by the state statute of limitations applicable to breach of contract actions. 383 U.S. at 704–05 & n. 7, 86 S.Ct. at 1112–13 & n. 7. The Court refused to adopt a uniform limitations

Every circuit which has addressed the question has held that the same policies which led the Court to adopt a federal limitations statute for hybrid claims brought under the LMRA apply with equal force to similar actions brought under the RLA, which governs labor-management disputes in common-carrier industries. *See, e.g., Dozier v. Trans World Airlines, Inc.*, 760 F.2d 849, 851 (7th Cir.1985); *Linder v. Berge*, 739 F.2d 686, 689 (1st Cir. 1984); *Barnett v. United Air Lines, Inc.*, 738 F.2d 358, 363–64 (10th Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 594, 83 L.Ed.2d 703 (1984); *Welyczko v. U.S. Air, Inc.*, 733 F.2d 239, 240 (2d Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984); *Sisco v. Consolidated Rail Corp.*, 732 F.2d 1188, 1192–93 (3d Cir.1984). Although this circuit has not yet addressed the question, *see Klemens v. Air Line Pilots Ass'n, International*, 736 F.2d 491, 499 n. 7 (9th Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 435, 83 L.Ed.2d 362 (1984), we have indicated in *dicta* that the distinction between actions brought under the RLA and those brought under section 301 of the LMRA is "without import." *Barina v. Gulf Trading & Transportation Co.*, 726 F.2d 560, 563 n. 6 (9th Cir.1984).

■ Although we recognize that the claim in the instant case is one step removed from a hybrid section 301/fair representation claim because it does not involve a claim for breach of the duty of fair representation, we are persuaded that a combined claim for breach of the collective bargaining agreement and breach of the status quo provisions of the RLA bears a greater similarity to the hybrid claim at issue in *DelCostello* than it does to the straightforward breach of collective bargaining agreement claim alleged in *Auto Workers v. Hoosier Cardinal Corp.* Un-

like the claim in *Hoosier* but like the claim in *DelCostello*, the instant claim involves an agreement to submit disputes to arbitration. *See DelCostello*, 462 U.S. at 162, 103 S.Ct. at 2289. Further, national uniformity is a more important concern in a case such as this which, like *DelCostello*, implicates the consensual processes which labor law was designed to promote: it raises questions regarding the appropriate terms and conditions to be maintained under the RLA's status quo provisions during the negotiation of a new collective bargaining agreement. *See id.* at 162–63, 103 S.Ct. at 2289–90. Finally, as discussed in detail *infra*, section IV C, the present action more closely resembles an action founded upon violation of a federal statute than it does an action for breach of contract. Therefore, we believe that the Court's reasoning in *DelCostello* governs the case before us, and we conclude that federal law, not state law, is the source of the limitations period applicable to a combined claim for breach of the collective bargaining agreement and violation of the RLA's status quo provisions.

There are two federal statutes of limitations which may apply to the instant case: the six-month period of section 10(b) of the NLRA or the two-year period provided in the RLA for suits challenging the decisions of the National Railroad Adjustment Board, 45 U.S.C. § 153 First (r)(1982). Because the IAM's second action was filed more than six months but less than two years after Aloha gave notice that it would continue to implement the terms of the Interim Agreement, we must decide which federal limitations period governs. *Cf. Linder v. Berge*, 739 F.2d at 689 (declining to choose between two-year period and six-

provision for section 301 suits, reasoning that lack of uniformity in the area of the enforcement of contractual rights would not interfere with the process of negotiating a labor agreement or of privately settling employee disputes under the agreement. *Id.* at 702, 86 S.Ct. at 1111. In *DelCostello*, the Supreme Court stressed that its holding "should not be taken as a departure from prior practice in borrowing

limitations periods for federal causes of action, in labor law or elsewhere," and stated that "resort to state law remains the norm for borrowing of limitations periods." 462 U.S. at 171, 103 S.Ct. at 2294. Thus, under *Hoosier* state statutes of limitations for breach of contract continue to apply to straightforward section 301 actions by unions for damages caused by breach of a collective bargaining agreement.

month period because action was time-barred under either statute).

The IAM's suggestion that the applicable period is the two-year period specified in section 153 First (r) of the RLA is meritless. On its face, the two-year limitations period of section 153 is applicable only to actions to review an award of the National Railroad Adjustment Board (NRAB). Section 153 governs the establishment, composition, powers and duties of the NRAB, which has jurisdiction over disputes between common carriers and their employees. 45 U.S.C. § 153 First (h). Subsection First (q) provides that employees or carriers aggrieved by the terms of an NRAB award or by the NRAB's failure to make an award in a dispute referred to it, may file an action in federal court for review of the NRAB's order. Subsection First (r) of the statute provides: *"All actions at law based upon the provisions of this section shall be begun within two years from the time the cause of action accrues under the award of the division of the Adjustment Board,* and not after." (emphasis added).

Furthermore, the nature of judicial review of an NRAB order is very different from that appropriate to actions for breach of a federal statute. NRAB awards are reviewed under a narrow standard of review. *See* 45 U.S.C. § 153 First (q); *Union Pacific R.R. Co. v. Sheehan,* 439 U.S. 89, 93, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978) (per curiam). Where an NRAB award exists, the award provides sufficient information for the reviewing court to exercise the requisite narrow scope of review. In contrast, the dispute in the instant case was never referred to the NRAB and no award was made. Indeed, the dispute was a major dispute concerning the formation of a collective bargaining agreement or efforts to secure new rights and incorporate them into future agreements, and binding arbitration was not available. *IAM v. Aloha Airlines, Inc.,* 776 F.2d at 815–16; *cf. Gordon v. Eastern Air Lines, Inc.,* 268 F.Supp. 210, 213 (W.D.Va.1967) (two-year limitations period in section 153 of the RLA is applicable to airline industry dispute where dispute was a minor dispute already submitted to and resolved by the System Board of Adjustment). Therefore, the two-year limitations period contained in section 153 of the RLA is not applicable to the instant action. *See Sisco v. Consolidated Rail Corp.,* 732 F.2d at 1193–94 (two-year period in section 153 of the RLA is not applicable to duty of fair representation claim under RLA).

We agree with Aloha that the limitations period applicable to a combined claim for breach of the collective bargaining agreement and breach of the status quo provisions of the RLA is the six-month period contained in section 10(b) of the NLRA. In *Brotherhood of Locomotive Engineers v. Atchison, Topeka & Santa Fe Railway Co.,* 768 F.2d 914 (7th Cir.1985), the Seventh Circuit held that an action for damages and injunctive relief based upon a combined claim for breach of the collective bargaining agreement and for breach of RLA § 152 First (duty to bargain in good faith) and RLA § 156 (obligation to provide advance notice of any unilateral change in working conditions), was governed by the six-month period in NLRA § 10(b). *Id.* at 919. The court reasoned that because a refusal to bargain is a classic unfair labor practice, the analogy to section 10(b) is stronger than in a duty of fair representation case. *Id.* The court stated that although two different sections of the RLA were invoked in the complaint, they covered the same ground because a "refusal to bargain consists in unilaterally—that is, without negotiations, without bargaining—altering the collective bargaining agreement." *Id.* at 920. *See also Robinson v. Pan American World Airways, Inc.,* 777 F.2d 84, 85–89 (2d Cir.1985) (court found that the same considerations which led the Supreme Court to apply the section 10(b) time limitation to fair representation actions are involved in claim alleging discharge for pro-union activities, brought under RLA § 2, Fourth).

The instant case likewise involves a refusal to bargain. Aloha refused to reinstate the terms of the Basic Agreement on the reinstatement date specified in the In-

terim Agreement without negotiations or bargaining. Therefore, the most analogous federal limitations period is the section 10(b) period applicable to unfair labor practice charges.

### B. RETROACTIVITY

The IAM contends that if we hold that the six-month limitations period contained in section 10(b) of the NLRA is applicable to actions such as the instant one, our decision should not be applied retroactively to bar the IAM's second complaint. We agree. In *Edwards v. Teamsters Local Union No. 36,* 719 F.2d 1036, 1040–41 (9th Cir.1983), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984), we held that *DelCostello* was not retroactively applicable to a hybrid section 301/fair representation action. We reasoned that retroactive application of a shorter statute of limitations than that pertaining when the case was filed is inherently unfair, 719 F.2d at 1040, and after analyzing the case under the three-part test set out by the Supreme Court in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), we declined to apply *DelCostello* retroactively to Edwards. *Id.* at 1041; *see also Barina v. Gulf Trading & Transportation Co.,* 726 F.2d 560, 563–64 (9th Cir.1984) (*DelCostello* not retroactively applicable to suit by employee against employer to set aside arbitration award).

The complaint in the instant case was filed on March 9, 1984, nine months *after DelCostello* was decided on June 8, 1983. The retroactivity question in this case is thus not whether to apply *DelCostello* retroactively, but whether to apply retroactively our holding in this case extending the *DelCostello* rationale to claims such as that in the instant case, for breach of the collective bargaining agreement and breach of the RLA's status quo provisions. Accordingly, we must evaluate the case in light of the three factors identified in *Chevron Oil Co. v. Huson:* (1) whether our decision establishes a new principle of law, (2) whether retroactive application will fur-

ther or retard the purposes of the rule in question, and (3) whether applying our new decision will produce substantial inequitable results. *Chevron Oil Co. v. Huson,* 404 U.S. at 106–07, 92 S.Ct. at 355–56.

As in *Barina* and *Edwards,* the first and third factors militate against retroactivity. Our decision establishes a new principle of law because it extends the rationale in *Del-Costello* to cases arising under the RLA, a question which we have previously not addressed. The holding in this case also extends *DelCostello's* rationale to a case which is one step removed from a hybrid breach of collective bargaining agreement/fair representation action. It would be inequitable to impose a six-month limitations period on the IAM where it could not have known or foreseen our holding in the instant case.

Although the second *Chevron Oil* factor does favor retroactivity because it promotes the prompt resolution of labor disputes, the strength of the considerations relating to the first and third factors outweighs those relating to the second factor in this case. *See Barina,* 726 F.2d at 564. Therefore, our conclusion concerning the applicable statute of limitations will not be applied retroactively to bar the IAM's second complaint.

### C. THE APPLICABLE STATE LIMITATIONS PERIOD

Under the law in effect prior to our decision in this case, the timeliness of a suit for breach of a collective bargaining agreement was to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations. *See United Parcel Service, Inc. v. Mitchell,* 451 U.S. at 60, 101 S.Ct. at 1562–63; *Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. at 704–05, 86 S.Ct. at 1112–13; *Edwards v. Teamsters Local Union No. 36,* 719 F.2d at 1038.

The parties disagree as to whether the most closely analogous state statute is the one-year period contained in Hawaii Rev. Stat. § 657–11 (governing recoveries authorized by federal statute) or the six-year

period contained in Hawaii Rev.Stat. § 657-1(1) or (4) (governing actions for the recovery of a debt founded upon a contract and residual types of actions). We agree with Aloha that the one-year period contained in Hawaii Rev.Stat. § 657-11 is most analogous, although not for the reasons which Aloha asserts. Aloha erroneously labels as dispositive this court's unpublished affirmance of a district court's pre *DelCostello* ruling that section 657-11 applies to hybrid breach of collective bargaining agreement/fair representation claims under the RLA. Our affirmance in *Hafer v. Air Line Pilots Association, International*, 525 F.Supp. 874 (D.Hawaii 1981), *aff'd mem.*, 698 F.2d 1230 (9th Cir.1983), was an unpublished disposition which has no precedential value and may not be cited to or by this court. 9th Cir.R. 21(c).

Aloha's reliance upon the Supreme Court's recent decisions in *Wilson v. Garcia*, ⎯ U.S. ⎯, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) and *Springfield Township School District v. Knoll*, ⎯ U.S. ⎯, 105 S.Ct. 2065, 85 L.Ed.2d 275 (1985) is similarly misplaced. These cases are wholly inapposite because they arose in the context of section 1983 actions and do not purport to address the question of the limitations period applicable to a dispute for breach of a collective bargaining agreement.

■ Nevertheless, Aloha correctly argues that the gravamen of the IAM's complaint centers around Aloha's refusal to reinstate the benefits and working conditions which it contends represent the status quo under the RLA. This obligation is founded upon the status quo provisions of the RLA (sections 155 and 156) rather than upon the collective bargaining agreement itself. *See United Transportation Union v. Florida East Coast Railway Co.*, 586 F.2d 520, 527 (5th Cir.1978) (per curiam) (action alleging violation of RLA through refusal to restore status quo was action upon a liability created by statute, and state statute of limitations period for such actions applied). Therefore, the most closely analogous state limitations period is the one-year period contained in Hawaii Rev. Stat. § 657-11 governing recoveries authorized by federal statute.

The IAM argues that even assuming that section 657-11 applies, its second complaint was timely filed because a cause of action for breach of contract does not accrue under Hawaii law until the plaintiff disaffirms the contract. The IAM concludes that because Aloha did not disaffirm the interim agreement until October 31, 1983, when a new collective bargaining agreement was reached, its complaint (filed March 9, 1984) was filed within one year of the accrual of its claim. Alternatively, the IAM argues that (1) Aloha continued to violate its rights each time it issued paychecks which were lower than the status quo rate; or (2) the running of the statute was tolled until June 24, 1983, the date on which Aloha refused to arbitrate the dispute.

The IAM's first contention misses the mark. As discussed *supra*, its action cannot be likened to a breach of contract claim. Rather, the IAM's claim is a federal claim for violation of the RLA. "The question of when a federal cause of action 'accrues' and the related question of whether it is 'tolled' by subsequent events, are federal questions." *Butler v. Local Union 823*, 514 F.2d 442, 448-49 (8th Cir.), *cert. denied*, 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975), *disapproved on other grounds, IBEW v. Foust*, 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979).

■ Nor is there any merit to the IAM's contention that Aloha's refusal to reinstate the status quo constituted a continuing violation. The fact that a party violating the RLA persists in its position or that the effects of its actions continue after the claim initially arose does not create a continuing violation so that the statute of limitations is re-started with each action. *See United Transportation Union v. Florida East Coast Railway Co.*, 586 F.2d at 527 (employer's refusal to restore status quo and decision to implement new rates of pay did not create continuing violation of RLA so that limitations period was re-started

with issuance of each paycheck); *see also Harper v. San Diego Transit Corp.*, 764 F.2d 663, 669 (9th Cir.1985) (fact that union continually failed to pursue employee's grievance does not constitute a continuing breach of its duty of fair representation so that statute of limitations is re-started).

The IAM's tolling argument, however, does have merit. In the analogous context of breach of contract/breach of duty of fair representation claims, the Eighth Circuit has held that the statute of limitations is tolled (or the cause of action does not accrue) until the employee has exhausted the grievance process and his grievance has been rejected. *Butler v. Local Union 823*, 514 F.2d at 449–50. The court reasoned that "the underlying policies of federal labor law will not be furthered by enmeshing § 301 breach of contract actions in technicalities that operate to the disadvantage of plaintiffs who have acted entirely in good faith in following the contract's command that they first submit their grievance to the arbitration process." *Id.* at 450; *see also*

*Smart v. Ellis Trucking Co.*, 580 F.2d 215, 219 n. 5 (6th Cir.1978) (litigants should not be penalized for complying with federal labor policy requiring that section 301 plaintiff seek arbitral relief as a prerequisite to federal claim), *cert. denied*, 440 U.S. 958, 99 S.Ct. 1497, 59 L.Ed.2d 770 (1979).[3]

■■■ In the instant case, the IAM pursued its grievance in good faith under the arbitration process set forth in the collective bargaining agreement.[4] When Aloha refused to arbitrate, the IAM sought an order compelling arbitration. When that order was denied, the IAM filed this action for adjudication of the merits of the dispute. It would be inequitable to penalize the IAM for its attempt to utilize the arbitration machinery of the collective bargaining agreement. Therefore, the IAM's cause of action under the RLA did not accrue until Aloha refused to arbitrate on June 24, 1983. The complaint was filed on March 9, 1984. That date is less than one year after June 24, 1983. Therefore, the IAM's action was timely filed.[5]

3. Unlike the instant case, neither *Butler* nor *Smart* involved a claim primarily founded upon a statutory violation; the claims in both cases were grounded in the collective bargaining agreement. Nevertheless, the equitable tolling doctrine which the Eighth and Sixth Circuits employed to avoid penalizing the litigants for exhausting their arbitral remedies under their collective bargaining agreements is applicable in the instant case because until June 24, 1983, the IAM believed that its claim was a minor dispute primarily founded upon the collective bargaining agreement and thus was arbitrable. Although on March 10, 1983 Aloha asserted that the dispute was not grievable, it was not until June 24, 1983 that Aloha spelled out the detail of its position that the IAM's complaint was a major dispute litigable in the federal courts.

4. The IAM's belief that the instant case presented a minor dispute was reasonable as a matter of law. Contrary to Aloha's contentions, the law was far from clear regarding whether the determination of the status quo under the RLA was a major dispute involving an interpretation of the Act or a minor dispute implicating an interpretation of the parties' collective bargaining agreement. In the predecessor case to the instant appeal, another panel of this court noted that "the IAM's argument [that this was a minor dispute] has intuitive appeal." *IAM v. Aloha Airlines*, 776 F.2d at 816. Although the panel

ultimately concluded that a determination of the status quo is a major dispute over which the federal courts have jurisdiction, *see id.*, it considered the question to be sufficiently novel to warrant publication.

We note that the application of the tolling doctrine to future actions of this type will be extremely limited. In light of our decision in *IAM v. Aloha Airlines, Inc.*, 776 F.2d 812 that the determination of status quo under the RLA is a major dispute which is not arbitrable, a party in the IAM's position can no longer contend in good faith that its grievance relating to status quo is arbitrable. Thus, pursuit of arbitral remedies available under a collective bargaining agreement would not operate to toll the statute of limitations on a status quo claim under the RLA accruing after the date of our decision in *IAM v. Aloha Airlines, Inc.*, 776 F.2d 812. *See International Union of Electrical Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 238, 97 S.Ct. 441, 448, 50 L.Ed.2d 427 (1976) (filing of grievance under collective bargaining agreement does not toll limitations period applicable to statutory claim of racial discrimination before the Equal Employment Opportunity Commission).

5. Aloha contends that a remand to the district court is required in order to develop the facts concerning the IAM's four-month delay in filing this action following the district court's October

## V. CONCLUSION

We hold today that the uniform federal limitations period for the bringing of unfair labor practice charges contained in section 10(b) of the NLRA governs combined claims for breach of the collective bargaining agreement and breach of the RLA's status quo provisions. Because it would be inequitable to impose retroactively on the IAM a six-month limitations period where the previously applicable period would have been twice as long in duration, we decline to apply to the IAM's action our determination that a federal six-month limitations period is applicable to combined actions for breach of the collective bargaining agreement and violation of the RLA's status quo provisions.

The IAM's complaint is not time-barred under the law applicable prior to our decision in this case. The most closely analogous state limitations period is the one-year period specified in Hawaii Rev.Stat. § 657-11. The IAM's cause of action accrued on June 24, 1983, the date on which Aloha refused to arbitrate. The IAM's complaint was filed on March 9, 1984, within one year from the date of the accrual of its claim. Therefore, the IAM's complaint was timely filed.

The district court's judgment is affirmed insofar as it holds that the IAM's request for an order compelling arbitration is precluded by *res judicata* principles. The district court's judgment is reversed insofar as it concludes that the IAM's complaint seeking to litigate the merits of the status quo applicable during negotiation of a new collective bargaining agreement is barred by *res judicata* principles. The district court is directed, however, to consider the possibility of consolidating the instant action with the unresolved counterclaim remaining in the first action.

AFFIRMED IN PART, REVERSED IN PART.

25, 1983 grant of partial summary judgment in Aloha's favor in the prior lawsuit: We disagree. Under the unique circumstances of this case, application of the equitable tolling doctrine presents a question which we are able to resolve as a matter of law: whether the IAM's belief that the instant case presented a minor dispute was reasonable under then-existing case law.

In light of our conclusion that the IAM's cause of action did not accrue until June 24, 1983, filing would have been timely until June 24, 1984; any delay in filing *within* that period is irrelevant.